JACOB DRUMMOND & *al. in Equity, versus* DAVID B. HINKLEY & *al.*

A grant to the defendant to have in his own flume, (which is supplied with water from the plaintiff's dam,) "a gate of twelve inches square, or equal to that," was *held* not to justify the use, *within the flume*, of a horizontal wheel, four and a half feet in diameter, propelled on the reaction principle, by the escape of water from the flume, through the wheel by twelve apertures, distributed over an area equal to several square feet, although the areas of all the apertures do not, in the aggregate, amount to more than twelve inches square.

Under such a grant, the grantee is not authorized to apply water upon a wheel, revolving *within the flume;* nor in any way, except outside of the flume and through an orifice or orifices in the flume. — PER WELLS, J.

Whether the allowed quantity of water can lawfully be taken through more than one orifice, *quære;* but if so, it must all be taken through a gate or space not containing a superficies of more than twelve inches square. — PER WELLS, J.

BILL for an injunction and for relief. The defendants had obtained a grant to take water from Pearson's milldam into their flume, through a penstock, and " to have a gate of twelve inches square or equal to that, in their flume." The lower end part of the flume was afterwards built by the defendants, in form of an upright cylinder, into which the water was plentifully admitted through a tunnel formed tube. At the bottom of the cylinder was placed their wheel, revolving

upon an iron plate. It was of "Valentine's reversing centrifugal" patent. It was a horizontal wheel of four and a half feet in diameter, with an upright shaft, and was propelled by the reaction of the water escaping from the flume, through twelve jet openings or orifices of discharge in the wheel, the openings or orifices averaging not more that six inches in length by two inches in width.

The prayer of the bill was, " that the said defendants be ordered and enjoined by the injunction of this honorable Court to desist and refrain from drawing water from their said flume, except through a gate-way twelve inches square, or equal to that, and that they be ordered and enjoined to reduce said gate and gate-way to the dimensions of twelve inches square, or equal to that, and that they be ordered and enjoined to shut said gate and not to raise the same until they shall have reduced the same to said dimensions, and that they be ordered and enjoined to close up permanently and effectually all of said gate-way or opening in said flume, except a superficial area twelve inches square, or equal to that; that is, an area of one hundred and forty-four square inches.

" And that they be ordered and compelled by the decree of said Court, to make reasonable satisfaction to the petitioners for the damages already done, and for such damages as they may, or shall hereafter do to the petitioners by the drawing off of said water and hindering and obstructing them in the use of their mills, and that all proper directions may be given for effectuating the purposes aforesaid.

" And, that in the mean time and forthwith, the said defendants may be enjoined and restrained, in manner aforesaid, from opening, or raising any gate, so constructed by them in said flume, as would or might draw from their said flume, to a greater extent, or more than would be equal to twelve inches square, as aforesaid, and permanently or effectually close or fill up all of said gate-way or opening, except an area equal to said twelve inches square, and so that no more than the last mentioned gate of said area is or can be opened to vent water from said flume.

" And that the petitioners have such other or farther relief in the premises as the nature and circumstances of the case may require and to your honors shall seem meet."

It was asserted by the defendants, that the application of the power, in that form, did not draw more water from the flume, than would pass through a gate of twelve inches square. This position was denied by the complainants.

Upon that question, much evidence was offered. Scientific men, and experienced practical men gave their opinions. Experiments were made and testified to by men practically and scientifically acquainted with matters of hydraulics and hydrostatics. Their results were at variance.

*Kent* and *Wakefield*, for the plaintiffs.

*J. & M. L. Appleton*, for defendants.

WELLS, J. — The several interests of the parties to this bill were derived from John Pearson. The defendants claim the use of the water, by virtue of a deed from Pearson to Hinkley, one of the defendants, bearing date September 9, 1830. This deed provides for the manner, in which the water is to be taken from Pearson's saw-mill flume, and conducted to Hinkley's flume; and it further provides that Hinkley "is to have a gate of twelve inches square, or equal to that, in his flume." The water is to be taken from such gate.

The defendants admit, in their answer, that they have no right to a greater quantity of water, than would flow through "a gate twelve inches square, or equal to that," in the flume, and say they have not used any greater quantity.

They state, that the wheel used by them, is Valentine's centrifugal reversing water-wheel. "Said wheel has an upright shaft, and is placed at the bottom of the circular part of the flume, revolves upon an iron plate, and is enclosed in a circular band or gate of iron; the wheel has twelve apertures, averaging less than two inches in width, and six inches in length, and is set in motion by raising the said circular gate of iron, in which it is enclosed, and all the water, which passes from the flume, passes and escapes through the twelve small aper-

tures, in said wheel, which are the only gates, or gate-ways or openings, which draw water from said flume." They deny, that more water passes through the apertures, than would by a gate twelve inches square.

The testimony on this point is contradictory. It is principally derived from experiments, and the opinion of machinists and mill-wrights. But from the view we have taken of the case, it is unnecessary to decide upon it.

The mode of estimating the volume of water, as expressed in the deed of John Pearson, cannot be disregarded. He had a right to prescribe the manner in which the quantity of water should be ascertained, and he has done so. It was to be by a *gate* in the flume, twelve inches square, or equal to that. The gate may vary in form, from a square, but its area is limited to a superficies, equal to twelve inches square. If a gate of a larger size is made, and the water is taken through several apertures, although the proper quantity of water may be taken, the grantee of Pearson has never obtained the right to have such a gate, in the flume. Pearson must have intended to prescribe such mode of measuring the water, as would be constantly open to inspection, and would be so obvious, that the quantity could never become the subject of controversy.

It does not fall within the province of judicial tribunals, to mould the contracts of parties, into what they may think to be expedient, nor to limit or extend their meaning. It would be grossly unjust to change the simple and effectual mode, prescribed by the grantor, for determining the quantity of water, to one complicated and perplexing, and to depart from the literal and fair construction of his deed, and thereby involve his heirs in expensive litigation, to ascertain their rights.

It is manifest, the grantor meant to express clearly in his deed, that the quantity of water should be measured by the size of the gate. So much water was to be taken, as would flow through a gate twelve inches square, or equal to that.

The apertures, through which the water runs, in the wheel of the defendants, as we understand, are extended over a space more than twelve inches square. They are made over a

broader area, than is warranted by the deed, and are not permitted, in such manner by it.

It may be that the grantor contemplated, by fixing the size of the gate, that the water should be used in one volume. Its quantity could be more easily ascertained when taken from one, than from several orifices. To ascertain the quantity of water, passing from twelve apertures, in the wheel, must necessarily require an accurate and careful examination, even when the wheel is at rest; and when in motion, it is difficult to perceive how they could be measured, except by the amount of water vented. Some of the witnesses say, that more water will pass through the apertures, when the wheel is in motion, than when at rest, and there is testimony entirely the reverse. Such a question could not be settled, in a manner entirely satisfactory, without actual experiment, but the measurement of the gate would determine the quantity very easily.

The variance between the witnesses, is an apt illustration of the difficulties, arising from a resort to the apertures, to find the quantity of water. And if it were once settled upon any given number and size of them, the controversy might be renewed, as often as others of different size and number should be made.

But we do not give any opinion upon the question, whether the water may be taken, from more than one opening in the flume. Yet we do mean to decide, that if it is taken through several apertures, they must be embraced within an area of twelve inches square, or one equal to that. The deed does not allow any larger opening than that in the flume.

There is also another objection to the course pursued by the defendants, and which is not permitted by the deed.

The water is to be drawn from the flume and is not to be used in it. The deed does not authorize the action of the wheel, in the flume. No such grant is made. The answer states, that the wheel is placed at the bottom of the circular part of the flume, and the passage of water through the apertures is the only mode by which it is taken from the flume. The grantor did not convey the right, to have the water set

in motion, by any machinery placed within the flume. It is not for us to say, 'whether such use of the water would be an essential detriment to him, but whether he has granted it. He had the power of judging of the degree of interference, which he would permit to be exercised, over his own property, and of the manner, in which it should be done.

The advantages to be derived from the use of improvements in machinery, can never justify the construction of a deed, differing from its plain and obvious import.

The conclusion to which we have arrived, is, that the plaintiffs are entitled to the injunction for which they have prayed in their bill.